JUDGE HARJANI

FILED
9/25/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AO 91 (Rev. 11/11) Criminal Complaint | AUSA Albert Berry III (312) 886-7855

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

LATRELL DOSS

CASE NUMBER: 20 CR 675
UNDER SEAL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about February 6, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Sections 1951(a) and 2 | obstructed, delayed, and affected interstate commerce, and the movement of articles and commodities in commerce, by robbery, as "commerce" and "robbery" are defined in Title 18, United States Code, Section 1951(b) |

This criminal complaint is based upon these facts:

X Continued on the attached sheet.

THOMAS J. CALLAGHAN
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 25, 2020

*Judge's signature*

City and state: Chicago, Illinois

SUNIL R. HARJANI, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, THOMAS J. CALLAGHAN, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July 2010. My current responsibilities include the investigation of homicide, kidnaping, and bank robbery and the apprehension of violent fugitives.

2. This affidavit is submitted in support of a criminal complaint alleging that LATRELL DOSS has violated Title 18, United States Code, Sections 1951(a) and 2. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging DOSS with obstructing, delaying, and affecting interstate commerce, and the movement of articles and commodities in commerce, by robbery, as "commerce" and "robbery" are defined in Title 18, United States Code, Section 1951(b), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, information provided to me by witnesses and various telephone companies and social media platforms.

## BACKGROUND

4. As more fully detailed below, the FBI is investigating a robbery that resulted in the murder of Victim A, an individual who sold shoes and other items of clothing. Prior to the murder, DOSS contacted Victim A, allegedly to set up an appointment to buy shoes. On February 6, 2020, Victim A and Victim A's friend ("EW1") met with DOSS and Subject 2 to make the sale, but instead of purchasing the shoes, DOSS and Subject 2 robbed Victim A. During the robbery, Subject 2 shot Victim A, killing him.

### *Victim A's Business*

5. Business records from Facebook and OfferUp, a social media platform that allows users to buy or list items for sale, show that Victim A was engaged in the business of selling shoes and other items of clothing. Records from Victim A's Facebook and OfferUp accounts show Victim A offering items for sale. Below is an example of Victim A's Facebook account offering items for sale and linking to an OfferUp Account:




6. Records from Victim A's OfferUp account, which include a profile photo depicting Victim A, showed a number of communications related to transactions for clothing. An example of some of the items for sale are listed below:


OfferUp Seller ID: [redacted]

PROFILE PHOTO

PROFILE INFO.

Username: [redacted]
Email:
Phone:
Location: Chicago, IL
Facebook ID: [redacted]

REGISTRATION INFO.

First Name: [redacted]
Last Name:
Reg. Date: 11/15/2016
Reg. Location: Chicago, IL
IP Address: 66.87.77.189
Internet Provider: Sprint PCS
Lat / Long: 41.6935 / -87.6145

| Date Posted | Photos | Title / Description | Price | Status | Location | OfferUp Link |
|---|---|---|---|---|---|---|
| 2/1/2020 (12:39 PM) |  | **Ugg size 6-10**<br>New in the box Size 6-10 I meet 79th halsted by the police station and if INTERESTED TEXT/CALL<br>Item ID: 821112590<br>Posted With Device: OfferUp/3.49.0 (build: 140122442; samsung SM-G975U QP1A.190711.020; Android 10; en_US) | $70.00 | LISTED | Chicago, IL 60617<br>Lat: 41.7246539<br>Long: -87.5494745<br>IP: 99.203.201.29 | View Item |
| 1/23/2020 (10:02 AM) |  | **Jogger sets sizes S-3X**<br>New Size S-3X I meet 79th halsted by the police station and if INTERESTED TEXT/CALL<br>Item ID: 816362192<br>Posted With Device: OfferUp/3.49.0 (build: 140122442; samsung SM-G975U QP1A.190711.020; Android 10; en_US) | $60.00 | LISTED | Chicago, IL 60617<br>Lat: 41.7246539<br>Long: -87.5494745<br>IP: 99.203.200.24 | View Item |
| 1/23/2020 (9:55 AM) |  | **Jogger sets sizes S-3X**<br>New Size S-3X I meet 79th halsted by the police station and if INTERESTED TEXT/CALL<br>Item ID: 816358645<br>Posted With Device: OfferUp/3.49.0 (build: 140122442; samsung SM-G975U QP1A.190711.020; Android 10; en_US) | $60.00 | LISTED | Chicago, IL 60617<br>Lat: 41.7246539<br>Long: -87.5494745<br>IP: 99.203.200.24 | View Item |
| 1/23/2020 (9:55 AM) |  | **Jogger sets sizes S-3X**<br>New Size S-3X I meet 79th halsted by the police station and if INTERESTED TEXT/CALL<br>Item ID: 816358883 | $60.00 | LISTED | Chicago, IL 60617<br>Lat: 41.7246539<br>Long: -87.5494745<br>IP: 99.203.200.24 | View Item |

7. Additionally, according to EW1 and members of Victim A's family, Victim A's sole job for approximately 3 months before his death was selling clothes and shoes online. EW1 and members of Victim A's family stated that Victim A sold and delivered clothes and shoes to customers throughout the Chicagoland area.

8. According to Individual A, the brother of Victim A, Victim A's business was engaged in interstate commerce in that it received goods from an internet site, DH Gate Online, that sent Victim A merchandise from out-of-state and sold goods that traveled in, and were used in, interstate commerce. Individual A stated for each order, Victim A would purchase approximately $5,000 worth of goods and the goods arrived in four or five different shipments each month via United Parcel Service (UPS).

### *Calls from DOSS to Victim A*

9. Data from Victim A's cellular phone reflects that on February 5, 2020 from 5:22 p.m. to 6:25p.m., Victim A's phone was in contact with a number ending in 0266 ("DOSS's Phone") eight times (six phone calls and two text messages). Additionally, on February 6, 2020, the day of the murder, between 1:01 p.m. and 6:56 p.m., Victim A's phone was in contact with DOSS's Phone twenty-two times (sixteen phone calls and six text messages), with most of those contacts initiated by DOSS's Phone.[1]

10. For example, on February 5, 2020 at approximately 6:11 p.m., after calling Victim A's phone four times without an answer, DOSS's Phone texted Victim A, "How long you think u gonna be bro I go to work at 11 I need it before Friday [February 7] so if today not a good day let me kno."[2] After not receiving a response, at approximately 6:15 p.m., DOSS's Phone texted Victim A, "And in all I have 500 to spend so can you work with maybe a deal like 4 jogging suits for 200." After again receiving no response, DOSS's Phone called Victim A. Victim A finally called DOSS's Phone back at approximately 6:25 p.m.

---

[1] The phone was identified as DOSS's as follows. First, according to Illinois Department of Corrections records, DOSS was on parole at the time of the murder. Those records reflect that, from February 4, 2019 through February 8, 2020, DOSS listed the number associated with the DOSS Phone as his phone number for check-ins with Parole. During this time period, DOSS checked in with parole on more than 150 occasions utilizing the Doss Phone. Second, I reviewed recordings of several calls made by inmates to the DOSS Phone between December 3, 2019 and February 1, 2020. I also spoke to DOSS in person on September 5, 2020. I compared the voice on the recorded calls to the DOSS Phone to DOSS's voice and concluded that the speaker was the same.

[2] According to parole records from the Illinois Department of Corrections, DOSS had not been employed since at least April 17, 2019.

11. On February 6, 2020, DOSS's Phone called Victim A's phone three times (without an answer) before sending a text message at approximately 1:07 p.m. stating, "Yooo bro." After, DOSS's Phone called and got no answer, at approximately 1:42 p.m., a text was sent from Victim A's phone to DOSS's Phone stating, "I'll call you soon I get out of court." At approximately 3:42 p.m., DOSS's Phone sent a message to Victim A's hone stating, "You still in court bro??"

***Armed Robbery and Murder of Victim A on February 6, 2020***

12. According to EW1, on February 6, 2020, EW1 and Victim A had gone to a house in Chicago so Victim A could sell some clothes to unknown individuals. While leaving the location, EW1 stated that Victim A received a phone call from a male, which Victim A answered and placed on speaker. The individual on the phone asked Victim A if he was still coming to 84th and Parnell in Chicago because the caller wanted to buy some Timberland boots. Victim A asked the person to text him the address. Data from Victim A's phone revealed that, at approximately 6:24 p.m., Victim A received a text message from DOSS's Phone stating, "8430 s parnell."

13. According to EW1, Victim A drove to the location, entered a parking lot and made a U-turn so the car could face the exit of the parking lot (there was only one way into and out of the parking lot). Once at the location, EW1 observed an individual later identified as DOSS and Subject 2 standing inside a vestibule.[3] As DOSS and Subject 2 approached the car, DOSS stated, in sum and substance, "Are

[3] As set forth below, EW1 identified DOSS from a photo lineup the day after the murder.

those shoes real?" Victim A invited DOSS to come to the car and look at the shoes. As DOSS and Subject 2 approached the car, Subject 2 had his hands in his pockets.

14. According to EW1, DOSS and Subject 2 walked around the back of the car and approached Victim A by the driver's side window. Once there, Victim A handed DOSS the shoes in a box. DOSS quickly looked at the shoes in the box and handed them to Subject 2. Subject 2 took his hand of out his pocket, took the shoes, extended his arm past DOSS, pointed a gun into the open driver's side window, and stated, in sum and substance, "This is a stickup." According to EW1, while Subject 2 was pointing a gun at Victim A, DOSS was standing at the driver's side window, looking into the car. DOSS did not appear surprised or startled by Subject 2 pointing a gun at Victim A.

15. According to EW1, Victim A, stated "There's 12 [the police]." The car then accelerated, EW1 heard someone say, "Fuck that," and heard a shot. EW1 ducked and heard Victim A state that he was hit. When EW1 looked over at Victim A, Victim A was leaning back in the driver's seat. The car accelerated and crashed into parked vehicles. EW1 got out of the car and ran.

16. According to police reports, Victim A was declared dead at the scene. According to a medical examiner's report, Victim A's death was ruled a homicide by gunshot wound. The projectile entered and exited Victim A's left arm, re-entered the left side of Victim A's chest, and exited Victim A's right flank.

17. Additionally, according to police reports, there was no merchandise recovered from Victim A's vehicle after the robbery and homicide of Victim A

indicating that DOSS and Subject 2 did in fact take the merchandise Victim A brought to sell.

18. On February 7, 2020, the day after the murder, EW1 viewed a photo lineup and identified DOSS as one of the two robbers.

19. According to cell site location information received from T-Mobile, DOSS's Phone was in the area of 8430 S. Parnell in Chicago at the time of the robbery and homicide. Additionally T-Mobile records reflect that, on February 6, 2020, the subscriber requested, and was assigned, a new phone number. Though the numbers changed, the phone that was being used remained the same. I have reviewed recordings of calls made by Cook County inmates to the new number assigned to DOSS's Phone. Based on my comparison to DOSS's voice, I believe that DOSS remains the user of that phone.

20. On September 4, 2020, I received a call from DOSS on the new number assigned to DOSS's phone and DOSS agreed to meet for an interview. Upon meeting DOSS for the interview, DOSS claimed that he never attempted to buy shoes from anyone on February 6, 2020. Additionally, DOSS denied that the phone number texting and calling Victim A's phone was his and stated that he only used the phone once to check in with parole.

## CONCLUSION

21. Based in the foregoing facts, I respectfully submit that there is probable cause to believe that on or about February 6, 2020, LATRELL DOSS obstructed, delayed, and affected interstate commerce, and the movement of articles and commodities in commerce, by robbery, as "commerce" and "robbery" are defined in Title 18, United States Code, Sections 1951(b) and 2.

FURTHER AFFIANT SAYETH NOT.

THOMAS J. CALLAGHAN
Special Agent, Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone September 25, 2020.

Honorable SUNIL R. HARJANI
United States Magistrate Judge