UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LATRELL DOSS | No. 20 CR 675<br><br>Judge Joan H. Lefkow |

**GOVERNMENT'S SECOND SUPPLEMENTAL CONSOLIDATED MOTIONS *IN LIMINE***

The United States of America, by and through its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, hereby respectfully submits the following second supplemental consolidated motions *in limine*.

This matter is set for trial beginning December 7, 2026. (Doc. 153.) The parties previously briefed several *motions in limine* (Docs. 61, 68, 70, 131, 132, 133, 135, 137, 184, 185), which the Court has largely addressed (Docs. 143 & 144).[1] As the parties have continued to prepare for trial, they have identified additional issues on which pretrial rulings would be beneficial.

## I. Background

For efficiency, the government reincorporates the factual background in its August 13, 2025 motion. (Doc. 131.)

In summary, the government's evidence is anticipated to show at trial, defendant set up a meeting with Victim A, purportedly to purchase Timberland boots.

[1] The Court has not yet ruled on two motions: (1) Motion to Allow Government's Admission of Portions of Defendant's Post-Arrest Statements, and Exclude Self-Serving Hearsay (Doc. 131 at 7-10; Doc. 133 at 5-9; Doc. 143 at 6); and (2) Motion for Disclosure of All Discovery Relating to "Assailant 1" (Doc. 139).

When Victim A arrived at the meeting with Eyewitness 1 in his car, the defendant and Assailant 1 approached the car. Defendant asked Victim A for the boots, and handed the boots to Assailant 1. Assailant 1 then announced that this was a robbery. When Victim A tried to flee, Assailant 1 shot and killed Victim A.

## II. Motion to Admit Evidence of Prior Identification

Eyewitness 1 was in the victim's car when the defendant robbed the victim. Chicago Police Department Detective Aaron Acevedo conducted a photo array with Eyewitness 1, and Eyewitness 1 identified the defendant from the photo array. The government intends to call both Eyewitness 1 and Det. Acevedo to testify about the prior identification, and introduce the photo array as an exhibit at trial.

Under Federal Rule of Evidence 801(d)(1)(C), a prior statement is not hearsay, and is therefore admissible, when the declarant testifies and is subject to cross-examination about the prior statement, and the prior statement identifies a person as someone the declarant perceived earlier. The out-of-court identification is admissible through the declarant, the agent who administered the photo array, or both. *See United States v. Cardena*, 842 F.3d 959, 990 (7th Cir. 2016) (officer may testify that witness identified defendant as perpetrator); *United States v. Foster*, 652 F.3d 776, 788 (7th Cir. 2011) (both agent who administered photo array and witness could testify about witness' prior identification). The photo array itself is admissible. *Foster*, 652 F.3d at 788. Testimony about circumstances surrounding the identification, including the creation of and instructions for the identification, are admissible. *Cardena*, 842 F.3d at 990. And although this rule is often used when a

witness forgets or changes his testimony, there is no requirement that a witness forget or change his testimony before the prior identification can be admitted. *Id*.

Therefore, so long as Eyewitness 1 and Det. Acevedo testify and are available for cross examination, the prior identification is admissible through either or both of them under Rule 801(d)(1)(C).

## III. Supplemental Motion to Preclude Witness Prior Convictions

The government respectfully requests additional rulings on the admissibility of two witnesses' prior criminal convictions.

### A. Witness Two

Witness Two is the victim's friend and was not a witness to the crime. The government intends to call Witness Two to testify about the victim's business selling shoes and other clothing items online, and to introduce some of the victim's online advertisements. The Court previously ruled that Witness Two's 2024 felony conviction is admissible, but Witness Two's 1997 and 2005 felony convictions are inadmissible. (Doc. 131 at 5-7; Doc. 135 at 5; Doc. 143 at 5.) As defense correctly noted, Witness Two also has a 2010 felony conviction for manufacture/deliver drugs. Witness Two received a sentence of two years of probation for this conviction.

Like the 1997 and 2005 felony convictions, the 2010 conviction should be excluded. "[I]f more than 10 years have passed since the witness's conviction or release from confinement for it, … [e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair

opportunity to contest its use." Fed. R. Evid. 609(b). Witness Two's 2010 conviction is 16 years old, and has little if any probative value. Whatever probative value it has is substantially outweighed by its prejudicial effect, which includes confusing the issues, misleading the jury, wasting time and needlessly presenting cumulative evidence. Thus, the Court should exclude Witness Two's 2010 conviction.

**B. Witness Three**

Witness Three is the victim's sibling and was not a witness to the crime. The government intends to call Witness Three to identify the victim and testify about the victim's business selling shoes and other clothing items online. The Court previously ruled that Witness Three's 2010 felony conviction is inadmissible. (Doc. 131 at 5-7; Doc. 143 at 5.) Witness Three also has:

- a 2002 juvenile adjudication for felony drug possession, for which Witness Three received a sentence of one year of probation;
- a 2002 juvenile adjudication for felony robbery, for which Witness Three received a sentence of five years of probation;
- a 2006 felony conviction for drug possession, for which Witness Three received a sentence of two years of probation;
- a 2013 misdemeanor conviction for theft of labor/services, for which Witness Three received a six-month conditional discharge; and
- a 2013 felony conviction for unlawful possession of a weapon by a felon, for which Witness Three received a sentence of three years of imprisonment that was discharged on October 17, 2016.

As explained above, if more than 10 years have passed since a witness' conviction or release from confinement for it, the conviction is admissible only if it's probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b). All of Witness Three's convictions are 13 or more years old, so have little to no

probative value. *See* Fed. R. Evid. 609 advisory committee's note ("after ten years following a person's release from confinement (or from the date of his conviction) the probative value of the conviction with respect to that person's credibility diminished to a point where it should no longer be admissible"). This is especially true given the nature of Witness Three's anticipated testimony, which is about the nature of the victim's business. Whatever probative value might exist for these convictions is substantially outweighed by the prejudicial effect, which includes confusing the issues, misleading the jury, wasting time and needlessly presenting cumulative evidence. Thus, the Court should exclude Witness Three's convictions.

## IV. Motion To Admit Limited Autopsy Photos

The government intends to introduce four autopsy photographs that have been submitted to the Court for in camera inspection. Autopsy photographs should be admitted if they have probative value with respect to a fact in issue, and their probative value outweighs the danger of unfair prejudice. *See United States v. Corley*, 519 F.3d 716, 726 (7th Cir. 2008) (affirming admission of two autopsy photographs because they were probative of victim's manner of death and extent of injury, provided context for other evidence, and government had curated number of photographs to minimize prejudice); *Maxwell v. United States*, 368 F.2d 735, 739 (9th Cir. 1966) ("Such photographs should be excluded where their principal effect would be to inflame the jurors against the defendant because of the horror of the crime; on the other hand, if they have a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, they are admissible[.]").

Here, the Court has ruled that evidence of the victim's death is relevant and admissible (Doc. 144 at 4-6), and if convicted, defendant's sentence will depend in large part on proof that the charged robbery resulted in the victim's murder; therefore, Mr. Williamson's cause and manner of death are facts in issue. The government has carefully curated four of 60 photographs to minimize the prejudicial effect of the photographs, and the photographs are each relevant to prove a point.

Specifically, the medical examiner is expected to testify that the victim's cause of death was a gunshot wound of the left arm into the chest; there was an entrance wound on the outer surface of Williamson's upper left arm, and an exit wound on the inner surface of Williamson's left arm, with a wound path in a left to right and downward angle; and a re-entrance wound on Williamson's left chest, and an exit wound on Williamson's right flank, with a wound path in a slightly front to back, left to right, and downward angle. Exhibit 1901 will help the medical examiner explain chain-of-custody; Exhibit 1902 will help her explain the entrance and re-entrance wounds; Exit 1903 will help her explain the exit and re-entrance wounds; and Exhibit 1904 will help her explain the final exit wound. Together, these exhibits will demonstrate the trajectory of the gunshot wound that killed the victim. Trajectory is highly relevant because it helps corroborate Nathaniel Sellers' testimony that Assailant 1 shot the victim from outside the driver's side window. Importantly, the government avoided selecting photographs that are unnecessarily graphic or gory. Therefore, the Court should admit the photographs.

## V. Motion to Excuse a Detailed List of Other Trial Testimony of Medical Examiner

The government intends to offer the expert opinion of Katrina Monday (formerly Katrina Thompson), a Medical Examiner formerly with the Office of the Medical Examiner of Cook County, and currently with the Office of the Medical Examiner of Onondaga County (OME), regarding the victim's cause and manner of death. Dr. Monday's report and examination, case file, and autopsy photographs have been tendered in discovery. While preparing Dr. Monday's expert disclosure, the government obtained her curriculum vitae, which includes her qualifications and the publications she has authored. The government learned, however, that neither Dr. Monday nor the Onondaga County OME has a list of all other cases in which, during the previous four years, she has testified as an expert at trial or by deposition.

Federal Rule of Criminal Procedure 16 generally requires "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii). But Rule 16 also provides that, "[a]t any time the court may, for good cause … grant other appropriate relief" under the criminal discovery rules. Fed. R. Crim. P. 16(d)(1).

Here, the government asked for whatever information is reasonably available concerning Dr. Monday's testimonies in the prior four years, and according to the Onondaga County OME, Dr. Monday testified as an expert at trial approximately: 8 times in 2022; 10 times in 2023; 9 times in 2024; 15 times in 2025; and 6 times in 2026. Beyond this, the Onondaga County OME did not maintain a list of cases in which Dr. Monday testified as an expert. Dr. Monday has testified as an expert in

numerous state court trials but has not previously testified in federal court. Dr. Monday is a full-time public servant and medical professional; therefore, it would be unduly burdensome to require her or her employer to attempt to recreate a list of prior testimonies. Therefore, there is good cause to excuse requirement of Rule 16(a)(1)(G)(iii) regarding disclosure of prior testimony, especially given the unique nature of a medical examiner's testimony, and the examiner's sole ability to testify to matters in her report—i.e., performance of the postmortem examination. Therefore, the government requests that the Court excuse this requirement.

## VI. Motion to Admit Business Records Pursuant to Federal Rules of Evidence 803(6) and 902(11)

This Court has already granted the government's motion to admit certain business records for T-Mobile and Offer-Up. (Docs. 70 143 at 5.)

The government now moves this Court to find, pursuant to Rule 104, that records from Apple are self-authenticating and hearsay-exempt business records within the meaning of Rules 902(11) and Rule 803(6). *See, e.g.*, *United States v. Kasvin*, 757 F.2d 887, 893 (7th Cir. 1985) (affirming trial court's preliminary determination pursuant to Rule 104 that business records were admissible pursuant to Rule 803(6)). Admission of these documents through a Rule 902(11) certification will save the parties, the Court, and the jury members significant time and resources, as the certifications will obviate the need for testimony from several custodian witnesses. This evidence is relevant to show defendant's iCloud account and his identity as linked to this robbery.

Under Federal Rule of Evidence 902(11), certified copies of domestic business records are self-authenticating if the party offering the records provides the adverse party written notice and allows the adverse party to inspect the exhibit and certification, allowing the party to challenge the authenticity of the records.[2] Rule 902(11) deems records self-authenticating if the records meet the requirements of Rule 803(6)(A)-(C), which in turn requires the following conditions:

> (A) the records was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

The Seventh Circuit has consistently upheld the admission of business records through business records certifications, pursuant to Rules 803(6) and 902(11). *See, e.g., United States v. Green*, 648 F.3d 569, 580-81 (7th Cir. 2011); *United States v. Klinzing*, 315 F.3d 803, 809-10 (7th Cir. 2003) (holding that admission of pre-certified business records under Rules 803(6) and 901(11) does not violate the Confrontation Clause because the records have "sufficient guarantees of reliability"); *United States*

[2] This motion constitutes written notice that the government intends to rely on record certifications under the aforementioned rules.

*v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (Seventh Circuit upheld the admissibility records through the use of Rule 902(11) certifications in light of *Crawford*).

Here, the government intends to introduce the following records, which have been produced to defense counsel, through records certifications:

- Subscriber information and device information for the Apple icloud account latrell1971@icloud.com, provided by Apple in response to a subpoena and records provided by Apple in response to a search warrant (23M483). A copy of the certifications related to these records from Apple are attached as Exhibit 1.

Because the business records from Apple and the accompanying certification, fall under Rules 902(11) and 803(6), the government respectfully requests that this Court find, under Rule 104, that the identified business records are self-authenticating. Before trial, to the extent the government receives additional certifications and provides them to the defense, the government may request that the Court admit additional documents pursuant to Rule 902(11).[3]

## VII. Motion To Admit Certain Evidence as Direct Evidence, or in the Alternative, as Evidence Admissible Pursuant to Rule 404(b)

### *A. Evidence of Other Acts – Accessibility to Firearms*

The government obtained evidence from the iCloud account: lattrell1971@icloud.com and contained therein were photos and videos near the date of the robbery and murder of Victim A. Specifically, the following relevant photos and videos that show defendant's access to firearms:

[3] The government may decide to call witnesses from one or more of the identified businesses if the witnesses have additional information, beyond certification of the relevant records, that would be helpful to the jury's understanding of the records.

1. Video 1: A video dated of February 8, 2020 (two days after the robbery and murder in this case), depicting a close up a person's hands a car holding a firearm with the serial number, MSX865.[4] This firearm was recovered in August 2020 and determined to be a 9mm Glock. Based on the firearm and toolmark expert examination of the bullet recovered from the victim's car, this firearm is the same type of firearm that could have been used to fire the bullet that killed the victim. Still image from this video is pictured below:




[4] The government submitted known images of defendant's hands for comparison with the hands in this video to the FBI Laboratory. The results of that analysis are pending.

2. Photo 2: A photo dated February 9, 2020, depicting defendant pointing a firearm towards money on the floor. Pictured below:



3. Photo 3: A photo dated February 15, 2020 depicting a firearm with an extended magazine on cream leather chair. Pictured below:



4. Photo 4: A photograph dated February 15, 2020 of a COLT Firearm photo serial number M1991A1. Pictured below:



5. Photo 5: A photograph dated February 28, 2020 of defendant wearing a white mask pointing a firearm at the camera. Pictured below:



6. Photo 6: An additional photo depicting defendant without the face mask, but in the same sweatshirt for comparison:



*B. The images from defendant's iCloud account are admissible as direct evidence*

Relevant evidence is admissible. Fed. R. Evid. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. In other words, evidence must be probative and "material" to be relevant. *See United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (*en banc*).

To prove robbery and attempted robbery under Title 18, United States Code, Section 1951, the government must establish (1) the defendant knowingly obtained or attempted to obtain money or property from or in the presence of the victim; (2) the defendant did so or attempted to do so by means of robbery, as that term is defined in these instructions; (3) the defendant believed that the victim would part with the money or property because of the robbery; and (4) the robbery or attempted robbery affected interstate commerce. For the attempt, the government must show that the defendant (1) knowingly took a substantial step toward committing the robbery, (2) with intent to commit the robbery. "Robbery" is defined as the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Here, defendant's access to firearms near the time of the robbery bears directly on whether he knowing had the means to effectuate the robbery through force or violence. Specifically, Video 1 is dated just two days after the robbery and depicts a firearm that was later recovered and determined to be a 9mm Glock pistol. The bullet that was recovered from victim's car had specific characteristics that show it could have been shot from this same type of firearm. Similarly, Photos 3 and 4 depict firearms showing defendant's ready access to. Further, Photos 2 and 5 (Photo 6 would used only to identify Photo 5) depict defendant pointing a firearm either at money or at the camera, which shows not only his accessibility to firearms, but his level of comfort in handling firearms in an aggressive manner meant to intimidate the viewer. In posing for, taking, and saving these photos, defendant intends to send an intimidating message to anyone who sees the images that he is prepared to threaten force of violence. This is exactly the message conveyed to Victim A and Victim B during the robbery and therefore direct evidence of the crime charged.

*C. Alternatively, the images from defendant's iCloud account are admissible under Rule 404(b) of the Federal Rules of Evidence*

Rule 404(b) of the Federal Rules of Evidence permits the admission of evidence of "a crime, wrong, or other act" in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In *Gomez*, the Seventh Circuit set the "roadmap" for determining the admissibility of other-act evidence. *Gomez,* 763 F.3d at 853; see also *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). First, "after a Rule 404(b) objection, the proponent of the other-act evidence must demonstrate that the evidence is relevant to a legitimate

purpose 'through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860). "If the proponent does so, the district court must then use Rule 403 to determine 'whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice,' taking into account 'the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860).

If the defendant argues that he did not have the motive, knowledge and intent to rob the victims, the government should be permitted to rebut this argument with these images and videos from defendant's iCloud account. For example, defendant may assert through testimony, argument, or questioning of the witnesses that defendant merely intended to purchase shoes and when his co-participant pulled out a firearm, he was so surprised he could not react, as an explanation for why he stood by while his co-participant robbed the victim at gunpoint and then shot him through the heart. Or the defendant may claim that he has no familiarity with firearms and was stunned when his accomplice pulled out the firearm for the transaction he set up with the victim. Further, defense counsel could suggest in his argument or questioning that defendant had no way of knowing or suspecting that this was a robbery set up. In any of those scenarios, defendant's access to firearms and the relaxed comfortability in which he handles these firearms is highly probative to impeach his credibility, if he testifies and to rebut this defense, if so asserted. *See Gomez*, 763 F.3d at 858.

While there is an inherent unavoidable risk in the admissible of other acts evidence, particularly here where the conduct is so similar the underlying conduct, indeed, the evidence would have no relevance if there was no relation to the underlying offense. The court's determination is not any risk of prejudice, but whether the other acts pose an unfair risk of prejudice. This Court can take steps to minimize the risk by considering whether the fact "is seriously contested and whether a jury instruction could cure the potential prejudicial effect." *Gomez,* 763 F.3d at 857, 860; *United States v. Jones,* 455 F.3d 800, 809 (7th Cir. 2006) (limiting instructions are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence). Should the defendant present a defense that he was an innocent bystander with no inkling that a robbery would take place because he had no familiarity with such conduct, as detailed above, a limiting instruction will cure any potential prejudice caused by the admissibility of these images and video depicting firearms.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: /s/ *Elly Moheb*
ELLY MOHEB
JENNIFER E. LAGRANGE
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: November 3, 2026